FRANK J. CLIFFORD, AND DOLORESE R. CLIFFORD v. RIVER BEND PLAN-
TATION, INC.

No. 199A84

(Filed 4 December 1984)

1. **Appeal and Error § 2— appeal to Supreme Court—dissent in Court of Appeals —issues limited to dissent**

   When an appeal is taken pursuant to G.S. § 7A-30(2), the only issues properly before the Court are those on which the dissenting judge in the Court of Appeals based his dissent.

2. **Appeal and Error § 2— appeal to Supreme Court—dissent in Court of Appeals —issue not raised at trial or preserved for appeal—heard in interest of justice**

   Where a dissent in the Court of Appeals, on which plaintiffs appealed to the Supreme Court, was based on an issue not properly raised at trial or preserved for appeal, the plaintiffs were not entitled to argue the issue in the Supreme Court. However, the issue was heard by the Supreme Court in the interest of justice.

3. **Evidence § 32.1; Contracts § 5— contract to purchase house—merger clause— statements before contract signed—inadmissible**

   Where a written contract to purchase a house made no mention of any warranty against flooding and contained a merger clause declaring that the entire agreement of the parties was contained in the writing, statements made before the signing of the contract were inadmissible and could not be used to prove the existence of a warranty.

Clifford v. River Bend Plantation, Inc.

4. **Sales § 6.4; Contracts § 18.1— purchase of home—flooding—seller attempts to remedy defect—no warranty**

There was no parol modification of a purchase contract where plaintiffs complained to defendant's president after a flood at the house which they had just purchased from defendant, and defendant's president said that the house was warranted, that he would take care of the matter, and sent plaintiffs a letter saying that warranties for workmanship, material, and subcontractors were for one year but proposing steps to correct the flooding. The fact that a seller attempts to remedy defects in a house that he has sold does not prove that such efforts were made pursuant to a warranty, and the bare statement that a warranty existed is insufficient to create a warranty.

5. **Sales § 6.4; Frauds, Statute of § 6— subsequent modification of contract to purchase house—statute of frauds—no warranty**

Where plaintiffs purchased a house from defendants pursuant to a written contract and subsequently encountered problems with flooding, subsequent modifications must be within the statute of frauds, and a letter that does not set out the essential terms of a warranty against flooding is not enforceable as a warranty.

6. **Sales § 6.4; Contracts § 18.1— contract to purchase house—subsequent warranty—no consideration or intentionally induced reliance**

Any warranty created when defendant sent plaintiffs a letter proposing repairs after plaintiffs complained of flooding in their newly purchased house was not enforceable because there was no evidence that defendant intentionally induced detrimental reliance or that any consideration passed to defendant.

APPEAL of right by plaintiffs from the decision of the Court of Appeals (*Judges Webb* and *Phillips* concurring, *Judge Eagles* dissenting) reported at 67 N.C. App. 438, 313 S.E. 2d 607 (1984), *disc. rev. denied*, 311 N.C. 304, 317 S.E. 2d 679 (1984), reversing the judgment entered by *Smith, J.*, on 10 July 1982 in Superior Court, CRAVEN County. Heard in the Supreme Court 11 October 1984.

This is a contract action arising from the sale of a house and lot in New Bern. Plaintiffs, Frank and Dolorese Clifford, purchased the house from defendant pursuant to a written contract entered into on 19 March 1976. Prior to that date plaintiffs had talked with defendant's employee, Phil Nelson, about the type of house they wished to purchase. Mr. Clifford returned to River Bend Plantation on 18 March 1976 to visit various houses in the company of Mr. Nelson. While Mr. Clifford was looking over the home that plaintiffs later purchased, he noticed that the earth under the house was damp. Mr. Clifford testified that he asked

whether the property flooded and Mr. Nelson responded that it did not.

The next day, 19 March 1976, Mr. Clifford went to the offices of defendant and offered to buy the home at 220 Rockledge Road for $40,000.00. Mr. Efird, defendant's president, accepted the offer. At some point in their negotiations, Mr. Clifford asked about the damp earth under the house and whether or not the property was subject to flooding. Mr. Efird then stated that the property was not subject to flooding and that the earth under the house was damp because the plumbing system had been drained. However, on cross examination Mr. Efird testified that he said the earth was damp because rainwater ran into the crawl hole door of the house. The record is unclear as to whether Mr. Efird made this statement before or after the written sales agreement was executed. The agreement contains a merger clause with the following language: "Buyer hereby acknowledges that he has inspected the above described property, that no representations or inducements have been made, other than those expressed herein, and that this contract contains the entire agreement between all parties hereto." The deal was closed sometime later.

Shortly after plaintiffs moved into their house on 30 May 1976, a flood occurred. Mr. Clifford contacted Mr. Efird who examined the property and told Mr. Clifford that the house was warranted, that he intended on staying there twenty-five years, and he would take care of the whole matter. Shortly after this conversation, plaintiffs received a letter from defendant confirming Mr. Efird's conversation with Mr. Clifford and stating that warranties on homes for workmanship, material and subcontractors are for one year. In the letter Mr. Efird proposed certain remedial steps to correct the flooding condition. His efforts to correct the flooding problem were unsuccessful and plaintiffs filed suit.

At the close of the trial, the trial judge submitted an issue to the jury as to the existence and breach of an express warranty against flooding. The judge did not submit an issue to the jury concerning any subsequent parol modification of the sales agreement. The jury found that an express warranty against flooding had been made and breached by the defendant and returned a verdict in favor of plaintiffs. Defendant's motions for directed ver-

dict, for judgment notwithstanding the verdict, and for a new trial were denied. The Court of Appeals reversed on the ground that the parol evidence rule was applicable and plaintiffs appealed.

*David P. Voerman, for the plaintiffs.*

*Allen, Hooten and Hodges, P.A., by John M. Martin, for the defendant.*

COPELAND, Justice.

[1, 2]  We note at the outset that plaintiffs have based their appeal, in this Court and the Court of Appeals, primarily on the theory that Mr. Efird made a parol warranty of no flooding after the written contract had been signed so that the parol evidence rule does not apply to this case. Judge Eagles based his dissent entirely on the theory that the conversation Mr. Efird had with Mr. Clifford after the first incidence of flooding amounted to a subsequent parol modification of the written contract. Plaintiffs did not object to nor assign as error the trial judge's failure to submit the issue of subsequent parol modification to the jury and thus are precluded from arguing that issue on appeal. "Under Rule 10 of the North Carolina Rules of Appellate Procedure, review is foreclosed except insofar as exceptions are made the bases of assignments of error and those assignments are brought forward." *State v. Jones*, 300 N.C. 363, 365, 266 S.E. 2d 586, 587 (1980). When an appeal is taken pursuant to N.C. Gen. Stat. § 7A-30(2), the only issues properly before the Court are those on which the dissenting judge in the Court of Appeals based his dissent. *In re Grad v. Kaasa*, 312 N.C. 310, --- S.E. 2d --- (11/6/84). Since Judge Eagles based his dissent on subsequent parol modification of the contract, that is the only issue on which plaintiffs can appeal. Because plaintiffs did not properly raise that issue at trial or preserve it for appeal, they may not argue it in this Court. However, in the interest of justice we will consider this issue and the other issues raised by plaintiffs' brief and argument.

[3]  The written contract before the Court in this case makes no mention of any warranty against flooding and contains a merger clause declaring that the entire agreement of the parties is contained in the writing.

"(W)here the parties have deliberately put their engagements in writing in such terms as imports a legal obligation free of uncertainty, it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in respect to those elements are deemed merged in the written agreement. . . . [I]n the absence of fraud or mistake or allegation thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent."

*Neal v. Marrone*, 239 N.C. 73, 77, 79 S.E. 2d 239, 242 (1953). In the absence of fraud in the inducement which renders the contract void, warranties cannot be asserted by parol. *American Laundry Machinery Co. v. Skinner*, 225 N.C. 285, 288, 34 S.E. 2d 190, 192 (1945). In this case the jury concluded that the statements made by defendant's agents did not amount to fraud. The merger clause in the written contract clearly excludes from the agreement everything not included in the writing, and parol evidence of express warranties made prior to the execution of the contract are incompetent and inadmissible. *Griffin v. Wheeler-Leonard and Co.*, 290 N.C. 185, 202, 225 S.E. 2d 557, 568 (1976). Therefore, the statements made by Mr. Nelson on 18 March 1976 and any statements made by Mr. Efird before the signing of the contract on 19 March 1976 are inadmissible and cannot be used to prove the existence of a warranty.

[4]    Plaintiffs' primary argument is that Mr. Efird's conversation with Mr. Clifford in early June and his letter confirming the conversation amounted to a subsequent parol modification of the contract. Plaintiffs argue that Mr. Efird's statement that the house was warranted and that he would take care of the whole matter constituted an express warranty. We disagree.

The fact that a seller attempts to remedy defects in a house that he has sold does not prove that such efforts were made pursuant to a warranty. The only thing said by Mr. Efird, subsequent to the signing of the contract, that could be construed as a warranty is his statement that the house was warranted. Aside from the fact that Mr. Efird testified at trial that he was under the

false impression that the house was warranted when he made that statement, the statement is too vague to create a warranty because it does not indicate what is included in the warranty. In his letter of 17 June 1976 confirming his conversation with plaintiffs, the only warranty Mr. Efird referred to was the standard one year warranty for workmanship, materials, and subcontractors. Nothing was said about a warranty against flooding. Other than Mr. Efird's statement that the house was warranted, there is no evidence that anyone made a warranty to plaintiffs on behalf of defendant after the written contract was signed. The bare statement that a warranty existed is insufficient to create a warranty when no one representing defendant ever made a warranty against flooding to plaintiffs subsequent to the signing of the contract.

[5]   Because the contract in this case is a contract for the sale of land, it must be in writing to comply with the Statute of Frauds. When the original agreement comes within the Statute of Frauds, subsequent oral modifications of the agreement are ineffectual. 72 Am. Jur. 2d Statute of Frauds § 274 (1974). *See General Tire and Rubber Co. v. Distributors, Inc.,* 253 N.C. 459, 117 S.E. 2d 479, 485 (1960) (a written contract not within the Statute of Frauds may be modified by subsequent parol agreement); *Jefferson Standard Ins. Co. v. Morehead,* 209 N.C. 174, 176, 183 S.E. 606, 608 (1936) (subsequent parol modifications are permissible provided the law does not require a writing). Even if the statement made by Mr. Efird in early June amounts to a warranty, it will be ineffectual unless there is some memorandum of it signed by Mr. Efird and setting out the essential terms of the warranty. 72 Am. Jur. Statute of Frauds § 339 (1974); *Kidd v. Early,* 289 N.C. 343, 353, 222 S.E. 2d 392, 400 (1976); *McCraw v. Llewellyn,* 256 N.C. 213, 217, 123 S.E. 2d 575, 578 (1962). An examination of the letter of 17 June 1976 reveals that it does not set out the essential terms of a warranty against flooding. The only mention made of a warranty is the statement that the normal warranties on homes for workmanship, material, and subcontractors last one year. In detailing proposed repairs to the house and property, Mr. Efird stated that those were items he *personally* felt needed to be corrected. At no point in the letter did Mr. Efird indicate that the repairs would be performed pursuant to any warranty. Since the house was more than one year old and had previously been occupied by Larry and Pa-

tricia Swendel, Mr. Efird's reference to the normal one year warranties appears to mean that he would perform the enumerated repairs even though he was not obligated to do so. The letter does not indicate that defendant made a warranty of any kind, much less a warranty against flooding, and so lacks an essential term of any oral warranty that might have been made. Therefore, if it is assumed that Mr. Efird's conversation with plaintiffs in early June 1976 created an oral warranty, it is unenforceable because it violates the Statute of Frauds.

[6] Even if it were shown that an oral warranty was made subsequent to the execution of the written contract and Mr. Efird's letter of 17 June 1976 amounted to a memorandum of the oral warranty sufficient to satisfy the requirements of the Statute of Frauds, the warranty would still be unenforceable. It is established law that an agreement to modify the terms of a contract must be based on new consideration or on "evidence that one party intentionally induced the other party's detrimental reliance. . . ." *Wheeler v. Wheeler*, 299 N.C. 633, 636, 263 S.E. 2d 763, 765 (1980). There is no evidence in this case that defendant or its agent, Mr. Efird, acquired any benefit or right from the purported warranty or that plaintiffs assumed any additional obligations or renounced any rights they had under the contract. Just as clearly, plaintiffs did not rely to their detriment on Mr. Efird's statement that the house was warranted. Defendant's obligation to buy back the property remained in force and plaintiffs' inability to enforce this obligation was due to their failure to comply with the terms of the buy back agreement. In the absence of evidence of consideration passing to defendant or that Mr. Efird intentionally induced detrimental reliance on the part of the plaintiffs, any warranty given by Mr. Efird subsequent to the signing of the contract is a simple promise not enforceable by the courts.

Based on our review of the record, we hold that defendant did not make any enforceable warranty of no flooding to plaintiffs. The decision of the Court of Appeals that parol evidence of warranties was improperly admitted at trial and that no subsequent parol modification of the contract was made is affirmed. Because the jury based its verdict on improperly admitted evidence defendant is entitled to a new trial. The Court of Appeals did not specify what relief defendant was entitled to, and its decision is modified to grant defendant a new trial.

Modified and affirmed.