RUTH D. PAGE, Administratrix of the Estate of LUCY PAGE HOGG v.
WILSON MEMORIAL HOSPITAL, INC., and CAROLYN COATES and
JACQUELINE SIMMS WARD

No. 807SC336

(Filed 18 November 1980)

**Evidence § 50; Physicians, Surgeons and Allied Professions § 15.2– patient's use of
bedpan – nurse's expert testimony improperly excluded**

> In an action to recover for injuries received by plaintiff's intestate when
> she fell and broke her hip while a patient at defendant hospital, the trial
> court erred in excluding expert testimony by a nurse regarding the standard
> of care in situations involving a patient's use of a bedpan, since the witness
> was a registered nurse licensed to practice in N.C., Kansas and Missouri; she
> had been an assistant professor at East Carolina School of Nursing where
> she supervised student nurses in caring for patients at hospitals in Nash,
> Pitt, Martin and Beaufort Counties; she was familiar with the practices,
> procedures and standards of nursing care in those hospitals where she
> supervised student nurses; her lecture responsibilities covered the nurses'
> role in meeting the physical and psychological needs of the patient through
> various nursing procedures; she had more than 14 years' experience as a
> nurse and nursing instructor; and the nursing practices in connection with
> patients' use of a bedpan are so routine and uncomplicated that the standard
> of care should not differ appreciably between counties such as the one the
> injury occurred in and neighboring counties in which the witness had
> worked. G.S. 90-21.12.

APPEAL by plaintiff from *Peel, Judge*. Judgment entered 17
September 1979 in Superior Court, WILSON County. Heard in the
Court of Appeals 8 October 1980.

This is a civil action by the duly appointed administratrix of
the estate of Lucy Page Hogg for damages due to personal
injuries received by plaintiff's intestate when she fell and broke
her hip while a patient at defendant Hospital. The evidence
showed that Mrs. Hogg was admitted to the hospital suffering
from congestive heart failure and shortness of breath, that she
was 69 years old and suffered from marked kyphosis, a condi-
tion which caused her to be seriously slumped over, that she
had experienced periods of confusion and mental dullness due
to her illness and medications she was receiving, and that she
was in a semi-private room with two beds and a chair.

On 17 January 1975 defendant Ward, a nurses' aide, assisted
Mrs. Hogg from her bed to a bedpan placed in the armchair in
the room. The chair was not within reach of a call buzzer.

Defendant Ward left the room three times for approximately four minutes each time to afford Mrs. Hogg privacy while using the bedpan in the chair. Each time defendant Ward departed from the room she instructed Mrs. Hogg that she would be back in a few minutes and for her not to get up until she returned to assist her. When she returned to assist Mrs. Hogg from the bedpan, defendant Ward found the patient lying on the floor. Mrs. Hogg suffered a fractured hip from the fall, and died in February of 1975 from causes unrelated to the accident.

Plaintiff brought suit under the Medical Malpractice Statute alleging that the negligence of defendant Ward caused Mrs. Hogg's injury. Defendants answered denying negligence on their part and pleading affirmatively the contributory negligence of the patient as a bar to recovery.

At trial, plaintiff called Janet Sue Pennington as an expert witness on the subject of nursing care. The trial judge, after *voir dire*, refused to allow the witness to answer hypotheticals as to whether defendant Ward's activities constituted a deviation from the standard of nursing care applicable to such situations in hospitals similar to Wilson Memorial. At the end of plaintiff's evidence, defendants' motion for directed verdict was granted. Plaintiff appeals.

*Biggs, Meadows, Batts, Etheridge & Winberry, by Auley M. Crouch III, for plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson and Jodee Sparkman King, for defendant appellees.*

ARNOLD, Judge.

Plaintiff contends that it was error for the trial court to exclude testimony of the expert witness, Nurse Pennington, regarding the standard of care in situations involving a patient's use of a bedpan, and in directing a verdict for defendants.

Nurse Pennington would have testified that placing the patient on a bedpan in a chair and leaving her unattended for periods of three to four minutes was a violation of the standard of nursing care in Wilson County Hospital or hospitals located in similar communities. Her testimony would have constituted

sufficient evidence of actionable negligence to take the case to the jury.

Defendants argue that the court correctly sustained objection to Nurse Pennington testifying as an expert witness concerning the standard of practice in the field of nursing in Wilson County or a similar community. They contend that plaintiff failed to establish Nurse Pennington's familiarity with the standard of nursing care in hospitals and communities "similar" to Wilson County Hospital, as required by G.S. 90-21.12. The essence of defendants' position is that the plaintiff did not present any evidence that the communities with which Nurse Pennington was familiar were *similar* to the community wherein the treatment occurred.

Article 1B, Chapter 90 of our General Statutes entitled Medical Malpractice Actions, controls the standard of care for "health care providers" including the practice of nursing. The Supreme Court of North Carolina, in *Wiggins v. Piver*, 276 N.C. 134, 171 S.E. 2d 393 (1970), abandoned the strict "locality" rule in favor of the "similar community" rule. That rule was affirmed in *Dickens v. Everhart*, 284 N.C. 95, 199 S.E. 2d 440 (1973), and is now codified in G.S. 90-21.12.

We find that the testimony of Nurse Pennington was admissible. By adopting the "similar community" rule in G.S. 90-21.12 it was the intent of the General Assembly to avoid the adoption of a national or regional standard of care for health providers and not to exclude testimony such as that offered in this case where it was shown that the witness was familiar with the standards of hospitals in adjoining and nearby communities.

The record shows that Nurse Pennington was a registered nurse licensed to practice in North Carolina, Kansas and Missouri, formerly an assistant professor at East Carolina School of Nursing where she supervised student nurses in caring for patients at Nash County Hospital in Rocky Mount, Martin County Hospital in Williamston, Pitt County Hospital in Greenville, Beaufort County Hospital in Washington and a nursing home in Greenville; that she was familiar with the practices, procedures and standards of nursing care in those hospitals where she supervised student nurses; that her lecture respon-

sibilities covered the nurses' role in meeting the physical and psychological needs of the patient through various nursing procedures; that she received her B.S. in nursing from the University of Kansas and had more than 14 years experience as a nurse and nursing instructor in North Carolina, Kansas and Missouri. Based on the record before us, we find that it was error to exclude Nurse Pennington's testimony and consequently to direct a verdict in favor of defendants.

Moreover, we suggest that the nursing practices in connection with patients' use of a bedpan are so routine and uncomplicated that the standard of care should not differ appreciably between counties such as Wilson and the neighboring counties of Nash and Pitt, or nearby Martin County. *See, e.g. Williams v. Reynolds*, 45 N.C. App. 655, 263 S.E. 2d 853 (1980); *Rucker v. High Point Memorial Hospital*, 285 N.C. 519, 206 S.E. 2d 196 (1974). Though *Williams* did not involve a case under the Medical Malpractice Statute, but rather alleged negligence by a veterinarian, Judge Hedrick observed that "[w]e are not dealing in this case with a complicated, novel or rare medical procedure, but rather with an operation commonly and routinely performed on certain male animals." *Williams v. Reynolds, supra* at 660, 263 S.E. 2d at 856.

The Court in *Wiggins* at 138, 171 S.E. 2d at 395, 396, observed: "The operative procedures here involved would seem to be as simple and uncomplicated as any cutting operation one may imagine. Reason does not appear to the non-medically oriented mind why there should be any essential differences in the manner of closing an incision, whether performed in Jacksonville, Kinston, Goldsboro, ... or any other similar community in North Carolina." We see no reason why the procedures dealing with a patient's use of a bedpan should be more complicated than those associated with closure of an incision or treatment of a gunshot wound. Having taught nursing care in Nash and Pitt county hospitals, Nurse Pennington is eminently qualified to testify as an expert witness concerning the practices and standard of care appropriate when administering a bedpan in communities similar to Wilson County.

As an additional argument in favor of the directed verdict in their favor defendants assert that the evidence establishes contributory negligence as a matter of law. We reject this con-

tention. Based on the evidence presented in this case it is for the jury to say whether the patient was contributorily negligent.

Testifying as an adverse witness defendant Ward, a nurses' aide, testified on cross-examination regarding prior instances where plaintiff's intestate was placed on a bedpan in a chair, and that she would not have placed the patient in the chair if the patient had been confused or disoriented. Inasmuch as plaintiff's counsel "opened the door" to this testimony in his adverse examination we find that the testimony was not improperly admitted in violation of G.S. 8-51, if indeed that statute is applicable.

Also testifying as an adverse witness, defendant Coates, a nurse, testified concerning statements plaintiff's intestate made to her after the fall. Plaintiff argues that this testimony was prohibited by G.S. 8-51 and constituted hearsay. We again, however, agree with defendants that plaintiff had "opened the door," and the testimony was admissible under the hearsay exceptions of *res gestae* and declaration against interest.

Reversed and remanded.

Judges Erwin and Hill concur.