SELBY SMITH, Plaintiff v. GILBERT G. WHITMER, M.D., and CAROLINA REGIONAL ORTHOPAEDICS, Defendants

No. COA02-1290

(Filed 15 July 2003)

**Medical Malpractice— standard of care—expert's knowledge not sufficient**

The testimony of a medical malpractice expert witness was properly excluded where the witness stated that he was familiar with a uniform or national standard of care, but provided no meaningful evidence that his community was similar to the community in which the alleged malpractice took place; offered no testimony regarding defendants' training, experience, or resources; and there was no evidence that a national standard of care is the same standard practiced in defendants' community. Summary judgment was properly granted for defendants because this witness was plaintiff's only expert.

Appeal by plaintiff from orders entered 5 June 2002 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 4 June 2003.

*Anderson Law Firm, by Michael J. Anderson, for plaintiff appellant.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Mark E. Anderson and Heather R. Waddell, for defendant appellees.*

TIMMONS-GOODSON, Judge.

Selby Smith ("plaintiff") appeals from orders of the trial court excluding plaintiff's expert witness and granting summary judgment in favor of Gilbert G. Whitmer, M.D. ("Dr. Whitmer") and Carolina Regional Orthopaedics ("CRO") (collectively, "defendants"). For the reasons stated herein, we affirm the orders of the trial court.

The pertinent facts of the instant appeal are as follows: On 6 December 2000, plaintiff filed a complaint against defendants in Nash County Superior Court, alleging that defendants were negligent in their medical treatment of plaintiff, resulting in permanent injury to plaintiff's left wrist. The complaint further alleged that CRO was a health care facility with its principal place of business in Nash

County, and that Dr. Whitmer was an orthopedic surgeon and partner in the practice.

In support of his complaint, plaintiff presented expert medical testimony by Dr. Melvin Heiman ("Dr. Heiman"), an orthopedic surgeon practicing in Abingdon, Virginia. During his deposition testimony, Dr. Heiman verified that he was familiar with the standard of care for orthopedic surgeons practicing in Tarboro and Rocky Mount, North Carolina, where defendants practiced. When further questioned, however, Dr. Heiman acknowledged that he was not licensed to practice medicine in North Carolina, had never visited Tarboro or Rocky Mount, and had no affiliation with any physicians practicing in those towns. When asked to describe the steps he had taken to familiarize himself with the relevant standard of care, Dr. Heiman stated that he understood "about the approximate size of the community and what goes on there. It seems comparable to Abingdon, perhaps a little bit bigger." Dr. Heiman explained that his information concerning the community was based on statements by plaintiff's counsel, but he could not remember any information told to him, and plaintiff's counsel did not supply him with any written materials. Dr. Heiman explained that

> [a]s I understand it, [the medical community of Tarboro and Rocky Mount is] a community not too different from the size of Abingdon and the hospital is somewhat the same. So, I would say it's pretty similar to here, but I've not personally walked in the hospital doors and I've not personally met any physicians there. . . .

> [Defense counsel]: So, it would be fair to say that you're not acquainted with the medical community in Tarboro, North Carolina, and Rocky Mount, North Carolina?

> . . . .

> A: That would be fair to say. I've not been down there.

> Q: Now, Doctor, I understood you to say just a minute ago when I asked that question that you believe that that community is similar to Abingdon.

> A: That's correct.

> Q: And, therefore, you believe you can testify about [the] standard of care. Is that right?

A: Well, you have to understand, in the orthopedic community, we pass certain examinations and become qualified to be orthopedic surgeons by adopting certain treatment programs if you're in Nome, Alaska, or Abingdon. It's all the same. So, it's not like it was at the turn of the century, you know, where medical practice was very different in different communities. I mean, there are some differences. We don't do open heart surgery here in Abingdon like in Washington, D.C. Maybe that's standard, you know, in the bigger hospitals. But as far as orthopedic surgeons are concerned, we're all trained and pass qualifying exams to treat people in similar fashions. So the standard of care for orthopedic surgeons all over the country is very, very similar.

Q: Are you saying there's a national standard of care for orthopedic surgeons?

. . . .

A: Well, there is in a way. In other words, in this day and age, orthopedic surgeons are educated and asked to pass certain qualifying exams such that our general way of treating patients is pretty standard no matter where you're practicing.

Q: Doctor, would you agree that if the practice of medicine—the standard care—practice of medicine is different—if it is different—assuming for the sake of my question that it's different in Rocky Mount, North Carolina, and Tarboro, North Carolina, than it is in Abingdon, Virginia, would you agree that you would not be able to testify about those differences?

. . . .

A: I'm just not—I don't know how to answer that question. I really don't.

. . . .

A: I can comment on the standard of care as far as a reasonably prudent orthopedic surgeon anywhere in the country regardless of what the medical community in Tarboro, North Carolina might do.

On 3 June 2002, defendants filed a motion to exclude Dr. Heiman's testimony on the grounds that he was not qualified to testify as to the relevant standard of care. Upon consideration of Dr. Heiman's testimony, the trial court agreed with defendants and

granted the motion to exclude his testimony. Because Dr. Heiman was plaintiff's sole expert witness, the trial court further granted a motion made by defendants for summary judgment. The trial court accordingly entered orders excluding Dr. Heiman's testimony and granting summary judgment to defendants. From the orders of the trial court, plaintiff appeals.

---

Plaintiff argues that the trial court erred in excluding Dr. Heiman's testimony and consequently, in granting summary judgment in favor of defendants. For the reasons stated herein, we affirm the orders of the trial court.

"In a medical malpractice action, a plaintiff must show (1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Weatherford v. Glassman*, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998). Section 90-21.12 of the North Carolina General Statutes prescribes the appropriate standard of care in a medical malpractice action:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice *among members of the same health care profession with similar training and experience situated in the same or similar communities* at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12 (2001) (emphasis added). Because questions regarding the standard of care for health care professionals ordinarily require highly specialized knowledge, the plaintiff must establish the relevant standard of care through expert testimony. *See Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 625, 504 S.E.2d 102, 108 (1998); *Weatherford*, 129 N.C. App. at 621, 500 S.E.2d at 468; *see also* N.C. Gen. Stat. § 8C-1, Rule 702(a) (2001). Further, the standard of care must be established by other practitioners in the particular field of practice of the defendant health care provider or by other expert witnesses equally familiar and competent to testify as to that limited field of practice. *See* N.C. Gen. Stat. § 8C-1, Rule 702(b), (d); *Heatherly*, 130 N.C. App. at 625, 504 S.E.2d at 108.

SMITH v. WHITMER

[159 N.C. App. 192 (2003)]

Although it is not necessary for the witness testifying as to the standard of care to have actually practiced in the same community as the defendant, *see Warren v. Canal Industries*, 61 N.C. App. 211, 215-16, 300 S.E.2d 557, 560 (1983), the witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care of similar communities. *See, e.g., Henry v. Southeastern OB-GYN Assocs., P.A.*, 145 N.C. App. 208, 210, 550 S.E.2d 245, 246-47, *affirmed per curiam*, 354 N.C. 570, 557 S.E.2d 530 (2001); *Tucker v. Meis*, 127 N.C. App. 197, 198, 487 S.E.2d 827, 829 (1997). The "same or similar community" requirement was specifically adopted to avoid the imposition of a national or regional standard of care for health care providers. *See Henry*, 145 N.C. App. at 210, 550 S.E.2d at 246; *Page v. Hospital*, 49 N.C. App. 533, 535, 272 S.E.2d 8, 10 (1980).

In *Henry*, the plaintiffs tendered a single expert witness, an obstetrician practicing in South Carolina, in support of their medical malpractice action against an obstetrician and medical facility located in Wilmington, North Carolina. In his deposition testimony, the expert witness failed to testify that he was familiar with the defendants' training, experience, the standard of care or the resources available in defendants' community. Instead, the expert witness asserted that the standard of care was the same throughout the United States, and that he was familiar with the uniform standard. Concluding that plaintiffs failed to present competent medical testimony establishing the relevant standard of care, the trial court granted directed verdict in favor of the defendants. On appeal, this Court rejected the plaintiffs' argument that their expert witness was qualified to testify as to the applicable standard of care. "[I]t is clear that the concept of an applicable standard of care encompasses more than mere physician skill and training; rather, it also involves the physical and financial environment of a particular medical community." *Id.* at 211, 550 S.E.2d at 247. Because the plaintiffs failed to establish that their expert witness was familiar with the standard of care practiced in Wilmington or a similar community, the testimony was properly excluded.

In the instant case, Dr. Heiman offered no testimony regarding defendants' training, experience, or the resources available in the defendants' medical community. Although Dr. Heiman asserted that he was familiar with the applicable standard of care, his testimony is devoid of support for this assertion. In preparation for his deposition, Dr. Heiman stated that the sole information he received or reviewed concerning the relevant standard of care in Tarboro or

SMITH v. WHITMER

[159 N.C. App. 192 (2003)]

Rocky Mount was verbal information from plaintiff's attorney regarding "the approximate size of the community and what goes on there." Dr. Heiman could offer no further details, however, concerning the medical community, nor could he actually remember what plaintiff's counsel had purportedly told him. Dr. Heiman acknowledged that he had never visited Tarboro or Rocky Mount, had never spoken to any health care practitioners in the area, and was "not acquainted with the medical community in Tarboro, North Carolina, and Rocky Mount, North Carolina[.]" Instead, Dr. Heiman stated that "the standard of care for orthopedic surgeons·all over the country is very, very similar" and that he could "comment on the standard of care as far as a reasonably prudent orthopedic surgeon anywhere in the country regardless of what the medical community in Tarboro, North Carolina might do."

Although Dr. Heiman stated that he was familiar with a uniform or national standard of care, there was no evidence that a national standard of care is the same standard of care practiced in defendants' community. Dr. Heiman likewise provided no meaningful evidence to establish that Abingdon, Virginia, was similar to Tarboro or Rocky Mount, North Carolina. As such, Dr. Heiman "failed to make the statutorily required connection to the community in which the alleged malpractice took place or to a similarly situated community." *Tucker*, 127 N.C. App. at 198, 487 S.E.2d at 829; *Henry*, 145 N.C. App. at 210, 550 S.E.2d at 247. Further, Dr. Heiman offered no testimony regarding defendants' training, experience, or the resources available in the defendants' medical community.

We conclude that plaintiff's expert witness failed to demonstrate that he was sufficiently familiar with the standard of care "among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action" as to offer relevant and competent evidence regarding the alleged negligence by defendants. N.C. Gen. Stat. § 90-21.12. The trial court therefore properly excluded testimony by Dr. Heiman, and we overrule this assignment of error. Because Dr. Heiman was plaintiff's sole expert witness, exclusion of his testimony rendered plaintiff unable to establish an essential element of his claim, namely, the applicable standard of care. *See Weatherford*, 129 N.C. App. at 621-22, 500 S.E.2d at 468-69. As plaintiff was unable to support an essential element of his claim, summary judgment in favor of defendants was proper. The orders of the trial court are hereby

Affirmed.

Judges HUDSON and STEELMAN concur.