DILLON, Judge,
dissenting.
At the summary judgment hearing below, Plaintiff relied on the opinions of two dentists — Dr. Thomas David and Dr. David Behrman — as her forecast of evidence to establish that (1) the provision of dental care by Defendants to Robert B. Webb, III, (Decedent) violated the standard of care for dental professionals; and that (2) this violation proximately caused Decedent to develop bronchopneumonia.[1] Because I do not believe that the trial court abused its discretion under N.C. Gen. Stat. § 8C-1, Rule 702 by excluding from its consideration the opinions of these dentists as to the cause of Decedent’s bronchopneumonia, I respectfully dissent.
Here, Plaintiff bore the burden of producing a forecast of evidence demonstrating “(1) the applicable standard of care; (2) a breach of such standard of care by [Defendants]; (3) [that] the injuries suffered by [Decedent] were proximately caused by such breach; and (4) the damages resulting to [Decedent].” Weatherford v. Glassman, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998). Our Supreme Court has held that “[w]here ‘a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony.’ ” Gillikin v. Burbage, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1964) (citations omitted).
*513 The theory of Plaintiffs case, here, is that Defendants violated the standard of care applicable to licensed dentists, that this violation proximately caused Decedent to contract bronchopneumonia, and that Decedent’s bronchopneumonia was the cause of his death. Defendants do not contend that Plaintiffs forecast of evidence regarding the applicable standard of care and the breach thereof was insufficient to survive summary judgment. Indeed, Plaintiffs two dental experts each stated their opinions concerning the applicable standard of care for a licensed dentist in performing Decedent’s dental procedure and, moreover, that Defendants had violated that standard.[2] Rather, Defendants argue — and the trial court concluded — that these same dentists did not qualify under Rule 702 to offer an expert opinion that the violation of the dental standard of care in this case was the proximate cause of Decedent’s bronchopneumonia.
The parties do not dispute that Plaintiff’s burden was to forecast evidence in the form of expert testimony to lay a proper foundation from which a jury could determine the cause of Decedent’s bronchopneumo-nia. The admissibility of expert testimony on the issue of medical causation is governed by Rule 702(a) of our Rules of Evidence, the relevant version[3] of which provides that “[i]f scientific, technical or other specialized knowledge will assist the trier of fact... to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion[.]”
In the context of a medical malpractice action, Rule 702(a) appears less restrictive as to the qualifications of a witness to provide an expert opinion on medical causation than Rule 702(b) as to the qualifications of a witness to provide an expert opinion on the appropriate standard of care. For instance, while an expert testifying as to the standard of care must generally be “a licensed health care provider,” this Court has held, in a medical malpractice case, that a witness need not be a licensed medical doctor in order to offer an expert opinion as to medical causation, Diggs v. Novant Health, 177 N.C. App. 290, 628, S.E.2d 851 (2006), noting that our Supreme Court has rejected the notion that *514 only a medical doctor can be qualified under Rule 702 to give an opinion regarding medical causation, id. (citing State v. Tyler, 346 N.C. 187, 203-04, 485 S.E.2d 599, 608 (1997)). Accordingly, I believe we are bound to conclude that Plaintiffs two dentist experts are not disqualified, as a matter of law, from offering opinions regarding Decedent’s onset of bronchopneumonia.
While it is true that the trial court is “afforded ‘wide latitude of discretion when making a determination about the admissibility of expert testimony[,]’ ”Howerton v. Arai Helmet, Ltd., 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citation omitted), I discern no abuse of discretion in the trial court’s decision to exclude the opinion testimonies of Drs. David and Behrman concerning the cause of Decedent’s bronchopneumonia in the present case. Although Dr. David opined that the standard care violation was the proximate cause of Decedent’s bronchopneumonia, he also testified that he was not an expert qualified to offer an opinion as to the cause of Decedent’s bronchopneumonia, specifically stating: “Again, I’m not an expert in that regard, so my only opinion would be as a health care practitioner and general knowledge in that realm, but I’m not going to offer an expert opinion.”
Likewise, Dr. Behrman stated in response to a question from Plaintiff’s counsel that it was his opinion that the standard of care violation caused Decedent’s bronchopneumonia; however, he qualified his response in stating that his opinion was “[w]ithin [his] knowledge as an oral and maxillofacial surgeon” and that he “would defer [his] opinions related to the development of [Decedent’s] bronchopneumonia to a medical doctor.” Further Dr. Behrman acknowledged that Decedent was a medically complex patient.
The majority cites the three-pronged analysis set out by our Supreme Court in State v. Goode, 341 N.C. 513, 461 S.E.2d 631 (1995), which the trial court must use in determining the preliminary issue of the admissibility of expert testimony. I disagree with the majority’s conclusion with respect to the first prong of the analysis, that the methodology employed by Drs. David and Behrman in determining the cause of Decedent’s bronchopneumonia was reliable. Plaintiff does not point to any testimony where either dentist discussed the methodology by which he determined the cause of Decedent’s bronchopneumonia. Further, I disagree with the majority’s conclusion regarding the second prong of the analysis, that Drs. David and Behrman were qualified to offer expert opinions as to the cause of Decedent’s bronchopneumonia. Plaintiff does not point to any testimony indicating that either dentist possessed the requisite “knowledge, skill, experience, training or education” to *515 state an opinion with any degree of certainty that it was Defendants’ conduct that caused Decedent’s bronchopneumonia. In other words, I do not believe that a trial court abuses its discretion as gatekeeper in excluding the opinion testimony of a witness concerning the cause of bronchopneumonia in a patient with a complex medical history simply because the witness testified that he has worked in the health care profession and has extensive experience in dental surgery, but otherwise provided no testimony indicating that he has any expertise in determining the cause of bronchopneumonia. Accordingly, I would vote to affirm the trial court’s decision to exclude this testimony.

. Plaintiff relied upon the opinion of a medical doctor that Decedent’s broncho-pneumonia caused his death. However, this medical doctor never expressed an opinion as to the cause of the bronchopneumonia

. Likewise, Defendants do not contend that Plaintiff’s forecast of evidence regarding the causal connection between Decedent’s bronchopneumonia and his death was not sufficient to survive summary judgment, as this connection was established through the opinion of a medical doctor.

. Rule 702(a) was amended for actions commenced after October 1,2011 to provide a stricter standard on the admissibility of expert testimony. See State v. McCrady,_N.C. App. _, _ S.E.2d _ (2014).